IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tawanda Harris,                              :
                    Petitioner               :
                                             :
        v.                                   :    No. 1353 C.D. 2021
                                             :
City of Philadelphia (Workers'               :    Submitted: July 29, 2022
Compensation Appeal Board),                  :
                    Respondent               :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: August 7, 2023

        In this workers' compensation case, Tawanda Harris (Claimant) petitions for review of the November 9, 2021 Opinion and Order of the Workers' Compensation Appeal Board (Board). The Board affirmed the February 10, 2021 Decision and Order of Workers' Compensation Judge (WCJ) Lawrence Beck, who granted the City of Philadelphia's (Employer) Termination Petition, denied Claimant's Review Petition, and denied as moot Employer's Suspension Petition. After careful review, we affirm the Board.

## I.    FACTS AND PROCEDURAL HISTORY

        On February 1, 2019, Claimant tripped over a mail bin in the course and scope of her employment with Employer as a clerical assistant.    Employer

acknowledged the injury in a Notice of Compensation Payable (NCP)[1] that recognized soft tissue injuries to Claimant's neck, shoulders, back, and knee, for which she received workers' compensation (WC) benefits. Employer filed its Termination Petition and an accompanying Suspension Petition on December 11, 2019, alleging in both that Claimant had fully recovered from her injuries as of November 20, 2019, the date of an independent medical examination (IME) performed by Dr. James Bonner (Dr. Bonner). Claimant thereafter filed her Review Petition on January 13, 2020, in which she sought to amend the NCP and add the injuries of bilateral cervical radiculopathy, cervical disc herniation, and a right shoulder partial rotator cuff tear. All three petitions were consolidated for hearing before the WCJ on July 20, 2020.

At the hearing, Employer submitted the deposition testimony of Dr. Bonner, who testified that he performed an IME of Claimant on November 20, 2019. As part of the IME, Dr. Bonner reviewed Claimant's medical history, which included a back injury caused by an automobile accident. Claimant informed Dr. Bonner that she was continuing to receive treatment for her February 1, 2019 work injury with physical therapy and medication and that she continued to have back pain, shoulder discomfort, and occasional neck pain. Dr. Bonner testified that Claimant's subjective complaints of pain were inconsistent with the results of his physical examination. He also noted Claimant's significant preexisting conditions involving her lumbar, spine, neck, and shoulders, and that Claimant's primary care physician, Dr. Murray Brand (Dr. Brand), previously had diagnosed Claimant with neuropathy, radiculopathy, and degenerative joint disease of the spine. (WCJ Finding of Fact (FOF) 1(b)-(g); R.R. 036a-37a.) Based on his physical examination of Claimant and review of her medical

---

[1] The NCP is a converted Notice of Temporary Compensation Payable. (Reproduced Record (R.R.) 0361a-62a.)

2

history and diagnostic records, Dr. Bonner made the following conclusions, as summarized by the WCJ:

[ ] Following his review of Claimant's history, examination, and records, Dr. Bonner related that Claimant sustained soft tissue injuries to her neck, shoulders, back, and knees on February 1, 2019. Claimant had received appropriate medical treatment for her injuries, which included use of [nonsteroidal anti-inflammatory drugs (NSAIDs)] and physical therapy. Claimant ha[s] fully recovered from all of the injuries she had sustained on February 1, 2019. She needs no additional treatment and can return to work as a clerical assistant without restrictions related to the February 1, 2019 injury. While Claimant does have some restrictions due to her pre[ ]existing frozen left shoulder, they are not related to the work injury.

[ ] Dr. Bonner further related that there was no clinical or diagnostic indication that Claimant sustained bilateral cervical radiculopathy on February 1, 2019. The [electromyogram (EMG)] findings were more consistent with a neuropathic process than radiculopathy. Additionally, there is no indication that Claimant sustained a cervical disc herniation on February 1, 2019. Claimant's cervical [magnetic resonance imaging scan (MRI)] showed pre[ ]existing degenerative changes with no acute findings, which would have presented as increased signals with certain protrusions.

[ ] Dr. Bonner further related that there was no clinical or diagnostic indication that Claimant sustained a right shoulder partial rotator cuff tear on February 1, 2019. The right shoulder MRI did not show any evidence of acute injury and the mechanism of injury was not of the type to case a rotator cuff tear. The partial thickness tears of the supraspinatus seen on the MRI are very common in people Claimant's age[ ] and, because of the lack of acute signals and the fact that she has degenerative disease in the shoulder, Dr. Bonner believe[s] the tear to be pre[]existing.

(FOF 1(h)-(j); R.R. 037a-38a) (subfinding letter designations removed).

3

Claimant testified by telephone on July 20, 2020, and also submitted a transcript of her deposition testimony taken on February 6, 2020. Claimant testified that her work with Employer as a clerical assistant primarily involved standing at a desk, but also involved lifting mail tubs. She also described two prior injuries caused by a motor vehicle accident and a bus accident. Although she received treatment for injuries to her back and left shoulder as a result of the accidents, she continued to work. After the February 1, 2019 work injury, Claimant underwent right shoulder, neck, and lower back MRIs and an EMG. She received treatment from several physicians and continues to utilize electrical stimulation and a heated pillow. She has not returned to work and does not believe that she can return to her pre-injury job with Employer because she cannot stand for prolonged periods or lift and carry mail tubs. She also has difficulty performing daily tasks like washing dishes and continues to have pain in and difficulties with her neck, back, and right shoulder. (FOF 2(a)-(f); R.R. 038a-39a.)

Claimant also submitted a transcript of the deposition testimony of Dr. Richard Mandel (Dr. Mandel), one of her treating physicians. Dr. Mandel first saw Claimant on August 20, 2019, and saw her again multiple times in 2019 and 2020. After performing his examinations and reviewing the results of Claimant's multiple post-injury diagnostic tests, Dr. Mandel ultimately opined that Claimant was not fully recovered from her work injury and continued to suffer from her work-related injuries, including aggravation of several of her preexisting conditions. Although Dr. Mandel agreed with Dr. Bonner that most of Claimant's symptoms were subjective, Dr. Mandel also testified that he did not observe any symptom magnification, exaggeration, or embellishment during his examinations of Claimant. (FOF 3(s)-(v); R.R. 041a-42a.)

In a Decision and Order circulated on February 10, 2021, the WCJ denied Claimant's Review Petition, granted Employer's Termination Petition, and denied as

4

moot Employer's Suspension Petition. In rendering his decision, the WCJ made the following relevant findings and credibility determinations:

[ ] [The WCJ] has reviewed Claimant's testimony and finds it credible, in part. This determination is not made based upon Claimant's deportment and demeanor while testifying live before [the WCJ] as Claimant did not testify in[ ]person, but rather through teleconference. [The WCJ] has no doubt Claimant suffers symptoms in her shoulder, neck, and back, and finds that testimony credible; however, regarding the source of such symptomatology, [the WCJ] credits the testimony of Dr. Bonner over that of Claimant and Dr. Mandel. In [the WCJ's] assessment, Claimant's testimony downplayed her significant pre[ ]existing issues and diagnoses, including prior accidents and diseases, in favor of what, by the accepted diagnostic medical record, was a minor trip and fall that resulted in little impact on those pre[ ]existing conditions. Further, [the WCJ] discredits Claimant's testimony regarding her status and ability to return to work as a result of her injury. Notwithstanding the obvious secondary gain attributable to ongoing disability, Claimant's full recovery is established by the credible testimony of Dr. Bonner.

[ ] [The WCJ] has reviewed the testimony of Dr. Bonner and Dr. Mandel and credits the testimony of Dr. Bonner. Dr. Bonner credibly, cogently, and clearly related Claimant' subjective complaints to her pre-existing diagnostic findings, diagnoses, and conditions. Dr. Mandel, while acknowledging that Claimant's complaints are mostly subjective[,] gave scant attention to Claimant's pre-existing complaints and diagnoses, including prior diagnoses of radiculopathy and neuropathy. The diagnostic studies, as credibly explained by Dr. Bonner, indicate no traumatic symptomatology, but rather longstanding and degenerative findings relative to Claimant's prior accidents and pre-existing diseases. [The WCJ] notes that both doctors, as well as Claimant, agree that Claimant recovered from her knee injury.

(FOF 4, 5; R.R. 042a-43a) (subfinding letter designations removed).

5

Claimant appealed to the Board on February 22, 2021, arguing chiefly that the WCJ's findings were not supported by substantial evidence. By Opinion and Order mailed November 9, 2021, the Board affirmed. Claimant filed a petition for review (PFR) in this Court on December 7, 2021.

## II. DISCUSSION[2]

### A. Issues Presented

In her PFR and brief, Claimant contends that the Board erred in affirming the WCJ's decision granting Employer's Termination Petition and denying her Review Petition. Claimant argues that the WCJ erred as a matter of law in these respects and that his decision was not supported by substantial evidence.

### B. Analysis

#### 1. Termination Petition

"To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased, or any remaining conditions are unrelated to the work injury." *Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). An employer seeking to terminate benefits therefore bears the burden of proving either that the claimant's disability has ceased or that any current disability arises from a cause unrelated to the claimant's work injury. *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998). Where a claimant complains of continued pain, an employer meets its burden when its "medical expert unequivocally testifies that it is his opinion, within a reasonable degree

---

[2] Our scope and standard of review of an order of the Board is limited to determining whether the WCJ's findings are supported by substantial evidence, whether applicable procedures were not followed, whether an error of law was committed, or whether constitutional rights were violated. *Hershgordon v. Workers' Compensation Appeal Board (Pepboys, Manny, Moe & Jack)*, 14 A.3d 922, 924 n.4 (Pa. Cmwlth. 2011).

6

of medical certainty, that the claimant is fully recovered, can return to work without restrictions[,] and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997) (footnote omitted). "If the WCJ credits this testimony, the termination of benefits is proper." *Id.*

Claimant does not argue that Dr. Bonner's opinions were incompetent or equivocal. Rather, she contends that the WCJ's acceptance of Dr. Bonner's opinion that Claimant's ongoing subjective symptoms and pain were not caused by the February 1, 2019 fall violates the principles set forth in *Gumro v. Workmen's Compensation Appeal Board (Emerald Mines Corp.)*, 626 A.2d 94 (Pa. 1993) and *Beissel v. Workmen's Compensation Appeal Board (Wanamaker, Inc.)*, 465 A.2d 969 (Pa. 1983). Claimant argues that *Gumro* and *Beissel* require an employer that seeks to terminate WC benefits on the ground that the claimant's disability no longer is work-related to establish an independent cause for the disability that arose *after* the filing of the original NCP. (Claimant's Br. at 17-19.) We disagree.

In *Beissel*, the claimant sought WC benefits for an injury to her back that occurred when she slipped and fell while working for the employer. After multiple hospitalizations and back surgery, the claimant filed a claim petition. 465 A.2d at 970. The employer eventually filed an NCP acknowledging an injury to the claimant's lower back. Two years later, the employer filed a termination petition seeking to terminate benefits on the ground that the claimant's ongoing condition was unrelated to her work injury. *Id.* at 970. A referee, now WCJ, determined that the claimant's current symptoms were not, in fact, related to the original work injury but, instead, were related to a "coughing and laughing spell while playing cards" that occurred approximately one year *prior* to the filing of the NCP. *Id.* The referee therefore concluded that the

7

claimant's condition was unrelated to the original work injury and terminated benefits. *Id.* The Board and this Court affirmed. *Id.* at 971.

The Pennsylvania Supreme Court reversed, concluding that the employer failed to carry its burden to establish that the claimant's disability changed *after* the filing of the NCP. *Id.* The Court concluded:

> It is clear that [the employer] has sought to prove, not that [the claimant's] disability has terminated since 1977, but that [the claimant's] current disability, which has remained unchanged since March [ ]1976, was never related to [the claimant's] [work injury].
>
> . . . .
>
> [The Pennsylvania Supreme] Court has stated that in a termination case, the employer must show either that the disability has ceased or that the continued disability is the result of an independent cause. [*McGee v. L. F. Grammes & Sons, Inc.*, 383 A.2d 864, 865 (Pa. 1978).]
>
> . . . .
>
> Just as we have held that the burden is on [an employer] to prove that an employe[e]'s disability has increased or decreased after the filing of [an NCP], we also hold that [an employer] has the burden of proving that an independent cause of an employe[e]'s disability arose after the filing of [an NCP] if the [employer] is seeking to justify the termination of benefits on the grounds that the employe[e]'s disability is no longer work-related.

*Id.* at 971-72.

Similarly, in *Gumro*, the claimant sustained a work-related injury to his knee when he slipped and fell in his employer's coal mine. *Gumro*, 626 A.2d at 95. He received WC benefits for approximately 16 months based on an NCP filed by the employer, during which time he had surgery on the knee and subsequently developed

pain and swelling due to deep venous insufficiency. *Id.* The employer in *Gumro* eventually filed a termination petition. The referee found the claimant's medical evidence regarding the venous insufficiency to be equivocal and therefore concluded that there was no established causal connection between that symptom, which the claimant's treating physician stated was the "underlying and fundamental reason why the [c]laimant [was] unable to perform his pre-injury employment," and the claimant's ongoing disability. *Id.* at 95-96. The referee therefore terminated benefits, and the Board and this Court affirmed. *Id.* at 96. The Pennsylvania Supreme Court reversed, relying on *Beissel.* That Court noted that the employer's medical expert specifically indicated that he could not testify regarding the causal relationship between the venous insufficiency and the claimant's work-related knee injury. *Id.* at 97. The Court therefore concluded that the employer did not satisfy its burden to establish an independent cause of the claimant's ongoing disability that arose after the NCP was filed acknowledging the claimant's knee injury. *Id.*

Beissel* and *Gumro* easily are distinguishable when the equivocation of terms in Claimant's argument is corrected. As *Beissel* instructs, the employer in a termination case must show *either* that the disability has ceased *or* that the continued disability is the result of an independent cause. Thus, the employer has the burden of proving that an independent cause of an employee's disability arose after the filing of an NCP only if the employer is seeking to justify the termination of benefits on the basis that the employee's *ongoing* disability is no longer work-related.

Here, Employer is not arguing that Claimant's disability remains ongoing but, nevertheless, is no longer related to her work injury. That argument would require, under *Gumro* and *Beissel*, Employer to establish an independent cause for the *disability* that arose after the filing of the NCP. Employer instead argues that Claimant's

*disability* has ceased altogether because she has fully recovered from the injuries identified in the NCP *and is no longer disabled*. Although the WCJ acknowledged that Claimant has ongoing *symptoms* and pain, he nevertheless found, based on Dr. Bonner's testimony, *both* that the ongoing symptoms are not related to Claimant's February 1, 2019 fall *and* that Claimant is capable of returning to work in full capacity. We reiterate:

> [The WCJ] has no doubt Claimant suffers symptoms in her shoulder, neck, and back, and finds that testimony credible; however, **regarding the source of such symptomatology, [the WCJ] credits the testimony of Dr. Bonner over that of Claimant and Dr. Mandel. In [the WCJ's] assessment, Claimant's testimony downplayed her significant pre[ ]existing issues and diagnoses, including prior accidents and diseases, in favor of what, by the accepted diagnostic medical record, was a minor trip and fall that resulted in little impact on those pre[ ]existing conditions. Further, [the WCJ] discredits Claimant's testimony regarding her status and ability to return to work as a result of her injury. Notwithstanding the obvious secondary gain attributable to ongoing disability, Claimant's full recovery is established by the credible testimony of Dr. Bonner.**

(WCJ FOF 4; R.R. 042a) (emphasis added).

Thus, because Dr. Bonner testified unequivocally both that Claimant's ongoing pain and symptoms were related only to her pre-injury degenerative conditions and that she, in any event, currently is not disabled from working at full capacity, *Beissel* and *Gumro* do not apply. Because Dr. Bonner's medical testimony is otherwise sufficient to support the WCJ's termination of benefits, we conclude that Claimant's challenge to the WCJ's decision in this regard is without merit.

10

## 2. Review Petition

In her Review Petition, which Claimant filed after Employer filed its Termination Petition, Claimant sought to correct the description of the work injury in the original NCP by adding the injuries of bilateral cervical radiculopathy, cervical disc herniation, and right shoulder partial rotator cuff tear. (R.R. 020a-23a.) As both parties correctly acknowledge, a claimant who files a review petition seeking to add injuries to those already accepted by an employer in an NCP bears the same burden of proof that applies to a claim petition. *See Colagreco v. Workers' Compensation Appeal Board (Vanguard Group Inc.)*, 232 A.3d 971, 978-79 (Pa. Cmwlth. 2020); *Aldridge v. Workers' Compensation Appeal Board (Kmart Corp.)*, 113 A.3d 861, 867 n.7 (Pa. Cmwlth. 2015). Claimant here bore the burden to prove that the alleged additional injuries were caused by her February 1, 2019 fall and that she suffered a resultant loss of earning power, *i.e.*, a disability. *Zuchelli v. Workers' Compensation Appeal Board (Indiana University of Pennsylvania)*, 35 A.3d 801, 804 (Pa. Cmwlth. 2011) (citing *Potere v. Workers' Compensation Appeal Board (Kemcorp)*, 21 A.3d 684, 689-90 (Pa. Cmwlth. 2011), and *Coyne v. Workers' Compensation Appeal Board (Villanova University)*, 942 A.2d 939 (Pa. Cmwlth. 2008)). The requirements to establish causation depend on whether the injury is obviously work related. An injury that does not immediately manifest itself while the employee is working is not "obvious," and in that circumstance the claimant must establish causation by unequivocal medical evidence. *Albert Einstein Healthcare v. Workers' Compensation Appeal Board (Stanford)*, 955 A.2d 478, 482 (Pa. Cmwlth. 2008); *Jeanette District Memorial Hospital v. Workmen's Compensation Appeal Board (Mesich)*, 668 A.2d 249, 251 (Pa. Cmwlth. 1995).

11

Claimant argues that the WCJ erred in accepting Dr. Bonner's opinion that nothing in the post-injury diagnostic studies support a finding that Claimant's work-related injury caused any of the additional conditions alleged in her Review Petition. She argues that the WCJ's findings in this regard are not based on substantial evidence because Dr. Bonner "completely downplayed the findings on the post-accident diagnostic studies" which, according to Dr. Mandel, clearly indicated that Claimant's fall aggravated Claimant's preexisting degenerative conditions. Accordingly, Claimant argues that "no reasonable mind would have accepted [Dr. Bonner's] opinion . . . ." (Claimant's Br. at 19, 21.) We again disagree.

Although Claimant couches her arguments in this regard in terms of "substantial evidence," her argument in reality is a veiled challenged to the WCJ's credibility determinations, which we will not disturb on appeal unless, in making those determinations, the WCJ acted arbitrarily or capriciously and disregarded evidence. *Empire Steeling Castings, Inc. v. Workers' Compensation Appeal Board (Cruceta)*, 749 A.2d 1021, 1027 (Pa. Cmwlth. 2000). Here, Dr. Mandel diagnosed Claimant with multiple injuries in addition to those identified in the NCP, attributing the additional injuries to Claimant's fall on February 1, 2019. Dr. Mandel based his diagnoses in large part on the differences between the results of diagnostic studies conducted prior to Claimant's work-related injury and those of studies performed after the injury. Although Dr. Mandel's testimony in this regard could be sufficient to support Claimant's Review Petition, the WCJ found Dr. Mandel's testimony to be not credible because the WCJ accepted Dr. Bonner's contrary testimony that Claimant's ongoing symptoms were related to Claimant's significant preexisting degenerative conditions.

We conclude that the WCJ's credibility determinations in this regard were neither arbitrary nor capricious. Rather, and contrary to Claimant's contention, a

12

reasonable mind could, and did, accept Dr. Bonner's testimony. As summarized above, Dr. Bonner testified that there was no objective clinical or diagnostic evidence that Claimant sustained any of the additional injuries included in her Review Petition. He indicated that, in his opinion, the post-injury EMG and MRI results were more consistent with Claimant's preexisting degenerative conditions and age than with an injury caused by Claimant's February 1, 2019 fall. Dr. Bonner further testified that the diagnostic results did not indicate any evidence of acute trauma or injury, which would be expected if Claimant's conditions were caused by Claimant's fall. Dr. Bonner's testimony therefore was competent and unequivocal and provides substantial evidence to support the WCJ's findings and credibility determinations. Claimant's challenge on this ground thus also is without merit.[3]

### III.   CONCLUSION

Because we conclude that the WCJ's decision is free of legal error and supported by substantial evidence, we affirm the Board.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[3] We further note that, as discussed above, Dr. Bonner testified that Claimant does not have any conditions that restrict her ability to return to her pre-injury work in full capacity. Thus, even assuming that Claimant's Review Petition had been granted, there still is competent, substantial evidence in the record indicating that these additional symptoms and conditions do not result in a "disability" that would entitle Claimant to ongoing WC benefits.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tawanda Harris,                          :
          Petitioner              :
                              :
       v.                          :   No.  1353 C.D. 2021
                              :
City of Philadelphia (Workers'           :
Compensation Appeal Board),              :
          Respondent              :

## ***ORDER***

AND NOW, this 7th day of August, 2023, the November 9, 2021 Order of the Workers' Compensation Appeal Board is AFFIRMED.

 

_____

PATRICIA A. McCULLOUGH, Judge